IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JALIL COLLAZO-ORTIZ | No. 17-cr-320-9 |

**PAPPERT, J.**                                                                                                                                         February 18, 2021

**MEMORANDUM**

      From February to May of 2017, law enforcement officers used wiretaps to monitor a drug trafficking conspiracy involving Jalil Collazo-Ortiz and several co-conspirators. (Change of Plea Hr'g Tr. 30:12–31:7.) On May 19, 2017, officers executed a search warrant at Collazo-Ortiz's home where they recovered a loaded semiautomatic firearm, $17,558 in cash, forty-seven bags of heroin and a digital scale. (*Id.* at 32:7–15.) Collazo-Ortiz was indicted on counts of: (1) conspiracy to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 846, 841(b)(1)(B); (2) possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (4) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He pled guilty on September 27, 2018, (ECF No. 229), and the Court imposed a sentence of 60 months' imprisonment for the conspiracy charge and concurrent 60-month sentences for possession with intent to distribute heroin and being a felon in possession of a firearm, (ECF Nos. 289, 290). The Court also imposed a consecutive 60-month sentence for possession of a firearm in

furtherance of a drug trafficking crime, four years' supervised release, a $1,000 fine and a $400 special assessment. (*Id.*) On June 25, 2020, he filed a *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (ECF No. 329.) At the Court's direction, he re-filed the Motion on the Court's standard form for § 2255 motions. (ECF No. 359.) Collazo-Ortiz argues that the Court should vacate his conviction and sentence for being a felon in possession of a firearm in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2020). For the following reasons, the Motion is denied and no certificate of appealability shall issue.

I

28 U.S.C. § 2255 permits a prisoner sentenced by a federal court to "move the court which imposed the sentence to vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). The petitioner bears the burden of proving that his conviction is illegal. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Further, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

A district court has discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under § 2255. *See Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). A district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show

conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41–42 (3d Cir. 1992)).  That is the case here.

## II

Collazo-Ortiz's Guilty Plea Agreement precludes the collateral relief sought.  Criminal defendants "may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008), *abrog. on other grounds by Garza v. Idaho*, 139 S. Ct. 738 (2019).  When a criminal defendant waives collateral challenge rights, the Court must evaluate the validity of the waiver by examining two factors: (1) whether the waiver was knowing and voluntary; and (2) whether enforcing the waiver "would work a miscarriage of justice." *Id.* at 237.

### A

In determining whether a waiver is knowing and voluntary, the Court "must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the terms of any provision in a plea agreement waiving the right to appeal or collaterally attack the sentence." *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (citing Fed. R. Crim. P. 11(c)(6)).  The Court did just that.

In his Guilty Plea Agreement, Collazo-Ortiz agreed that "the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28

3

U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law," subject to certain exceptions; all of which do not apply. *See* (Guilty Plea Agreement ¶ 15).

At his change of plea hearing, Collazo-Ortiz acknowledged that he signed the Guilty Plea Agreement containing the waiver of his right to appeal or collaterally attack his sentence. (Change of Plea Hr'g Tr. 18:25–19:1.) Collazo-Ortiz stated that before signing the Agreement he read it and discussed it with his attorney and that he understood its terms. (*Id.* at 19:2–10.) During his guilty plea colloquy, the Court separately reviewed his limited right to appeal and collateral proceedings and Collazo-Ortiz confirmed again that he understood and agreed to them all. (*Id.* at 24:14–25:14.) Collazo-Ortiz's guilty plea, including the waiver of his rights to collaterally challenge his sentence, was knowing, voluntary and intelligently made. (*Id.* at 41:12–25.)

B

The Court must consider whether enforcing this waiver would work a "miscarriage of justice." *Mabry*, 536 F.3d at 237. Courts should apply the miscarriage of justice exception to a collateral attack waiver "sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (citation omitted). Nevertheless, the Court has an affirmative duty to examine the issue. *See Mabry*, 536 F.3d at 237.

To determine whether enforcement would create a miscarriage of justice, courts should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and

4

the extent to which the defendant acquiesced in the result." *Id.* at 242–243 (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).

The Third Circuit has recognized the miscarriage of justice exception in a few limited circumstances, such as where constitutionally deficient lawyering prevented a defendant from understanding his plea, where a defendant should have been permitted to withdraw a guilty plea or where the waiver itself was the product of ineffective assistance of counsel. *See United States v. Spivey*, 182 F. Supp. 3d 277, 280 (E.D. Pa. 2016) (citing *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007); *Wilson*, 429 F.3d at 458). Collazo-Ortiz's claim does not fall within the "limited circumstances" recognized by the Court of Appeals and enforcing his agreed-to waiver will not work a miscarriage of justice. *See Khattak*, 273 F.3d at 563.

## III

Collazo-Ortiz did not waive in his Guilty Plea Agreement his right to assert a claim of ineffective assistance of counsel. To the extent he raises one now, the claim is denied. A defendant who claims to have been denied effective assistance must first show that counsel performed deficiently. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires showing that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In other words, this element is satisfied if "counsel's performance fell outside the bounds of competent representation." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). The defendant must also show that counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 687. To show prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Buck*, 137 S. Ct. at 776 (quoting *Strickland*, 466 U.S. at 694).

If Collazo-Ortiz is attempting to argue that his counsel was ineffective for not explaining that knowledge of his status as a felon was a material element of the offense prior to his guilty plea, that argument fails. "[T]here is no general duty on the part of defense counsel to anticipate changes in the law," so counsel's failure to explain the law as it is today could not support an ineffective assistance of counsel claim. *Davies*, 394 F.3d at 189 (quoting *Forte*, 865 F.2d at 62).

## IV

When a district court denies a § 2255 motion, a petitioner may only appeal if the district court grants a certificate of appealability. 28 U.S.C. § 2253. Because Collazo-Ortiz has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the dispositions of his claims, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

6